http://www.va.gov/vetapp16/Files5/1639934.txt

Citation Nr: 1639934 
Decision Date: 09/30/16 Archive Date: 10/13/16

DOCKET NO. 10-10 523 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas

THE ISSUES

1. Entitlement to an effective date prior to April 17, 2009 for the grant of service connection for residuals of right ankle sprain with degenerative changes and laxity. 

2. Entitlement to a rating in excess of 10 percent for residuals of right ankle sprain with degenerative changes and laxity, to include entitlement to a total disability rating for compensation purposes based upon individual unemployability (TDIU). 

REPRESENTATION

Appellant represented by: John S. Berry, Attorney at Law

ATTORNEY FOR THE BOARD
C. Lawson, Counsel

INTRODUCTION

The Veteran served on active duty with the United States Army from September 1993 to December 1993.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a March 2011 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas. 

In a December 2012 decision, the Board denied entitlement to service connection for a right knee disorder, entitlement to an initial evaluation in excess of 10 percent for residuals of right ankle sprain with degenerative changes and laxity, and entitlement to an effective date prior to April 17, 2009 for the grant of service connection for residuals of right ankle sprain with degenerative changes and laxity. The Veteran appealed this decision, and in a March 2014 Memorandum Decision, the Court of Appeals for Veterans Claims (Court) affirmed the Board's decision denying service connection for a right knee disorder and vacated the Board's decision with respect to the right ankle increased rating and effective date issues, and remanded these matters back to the Board. In December 2012, the Board found that the matter of entitlement to a TDIU had been raised as part of the Veteran's appeal for a higher rating for his service-connected right ankle disability, and remanded that matter to the RO for additional development. In December 2013 the TDIU issue was again remanded for further development.

FINDINGS OF FACT

1. The Veteran was discharged from the service in December 1993 and it reasonably appears that the original claim for service connection for residuals of right ankle sprain with degenerative changes and laxity was received on, but not prior to, January 19, 2009. 

2. During the entire rating period, the Veteran's residuals of right ankle sprain with degenerative changes and mild laxity have not caused marked limitation of ankle motion.

3. The Veteran's service-connected right ankle disability is not of such nature and severity as to preclude him from engaging in all forms of substantially gainful employment.

CONCLUSIONS OF LAW

1. The criteria for a January 19, 2009 effective date, but not earlier, for the grant of service connection for residuals of right ankle sprain with degenerative changes and laxity, are met. 38 U.S.C.A. §§ 5101, 5110 (West 2014); 38 C.F.R. §§ 3.1(p), 3.400 (2015).

2. The criteria for an initial evaluation in excess of 10 percent disabling for service-connected residuals of right ankle sprain with degenerative changes and laxity have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.71a , Diagnostic Code 5271 (2015).

3. A TDIU rating is not warranted due to the Veteran's service-connected right ankle disability. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.16, 4.19 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Effective Date

The Veteran argues that an earlier effective date than April 17, 2009 is warranted for the grant of service connection for residuals of right ankle sprain with degenerative changes and laxity. It is argued that there is sufficient evidence that a claim was filed prior to April 17, 2009. It is maintained that the effective date for the grant of service connection should be January 19, 2009, as that is the date the claim was filed. 

After carefully reviewing all of the evidence, including the arguments presented to the Court and the evidence submitted thereafter, the Board finds that the earliest claim for service connection for residuals of right ankle sprain with degenerative changes and laxity was filed on January 19, 2009.

Unless specifically provided otherwise in the statute, the effective date of an award based on an original claim for compensation benefits shall be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C.A. § 5110 (a); 38 C.F.R. § 3.400. The effective date of an award of disability compensation shall be the day following separation from service or the date entitlement arose if the claim is received within one year of separation, otherwise the date of claim or the date entitlement arose, whichever is later. 38 U.S.C.A. § 5110 (b); 38 C.F.R. § 3.400 (b)(2).

A specific claim in the form prescribed by the Secretary must be filed in order for benefits to be paid or furnished to any individual under the laws administered by VA. 38 U.S.C.A. § 5101 (a); 38 C.F.R. § 3.151 (a). The term "claim" or "application" means a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement to a benefit. 38 C.F.R. § 3.1 (p).

Any communication or action indicating an intent to apply for one or more benefits under the laws administered by VA, from a Veteran or his representative, may be considered an informal claim. Such informal claim must identify the benefit sought. Upon receipt of an informal claim, if a formal claim has not been filed, an application form will be forwarded to the claimant for execution. If received within one year from the date it was sent to the Veteran, it will be considered filed as of the date of receipt of the informal claim. 38 C.F.R. § 3.155 .

Here, the Board finds, as will be explained in further detail below, that the original claim for service connection for right ankle sprain with degenerative changes and laxity was received on January 19, 2009. The representative argued to the Court, as evidenced by the Court's March 2014 order, that he had submitted the initial claim to VA on January 19, 2009. Additionally, in his post-Court remand brief to the Board, received in September 2014, he indicated, in discussion on page 4, including in Footnote 18, that the Court's record reflected that he submitted original informal claim documents in January 2009; attached to a cover letter which listed enclosures permitting not only his authorization to represent the Veteran, but also an authorization to release to him the Veteran's medical records, and attached a VA Form 21-4138 dated December 17, 2008 which a review of the record reveals is a claim for service connection for right ankle disability. (The one of record is date-stamped by VA as having been received on April 17, 2009.) 

While the January 2009 cover letter and the original claim documents which the representative states accompanied it are not in VA's record, he indicates that they were before the Court. His mention of a claim being submitted on January 19, 2009, coupled with VA's February 2009 Privacy Act response to a request by him for records contained in the Veteran's claims folder, with no other earlier evidence of record, provides reasonable doubt to permit VA to find that the original claim for service connection for right ankle disability was filed on January 19, 2009. As no earlier claim date is shown, and the claim was filed more than 1 year post-service, January 19, 2009 shall be the effective date of the grant of service connection. 38 U.S.C.A. § 5110; 38 C.F.R. § 3.400. The Board notes the Board previously considered the matter of whether the effective date for the grant should be the December 17, 2008 date written by the Veteran on his VA Form 21-4138. However, the date a document is signed is not controlling. The date of receipt by VA is what is important, and the preponderance of the evidence indicates that VA did not receive a claim prior to January 19, 2009. To the contrary, the representative stated in his September 2014 post Court remand brief that a claim was submitted in January 2009, and has asked for a January 19, 2009 effective date. 

Higher Evaluation

The Veteran appeals for an initial evaluation in excess of the 10 percent rating currently assigned for residuals of right ankle sprain with degenerative changes and laxity from April 2009.

Disability evaluations are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155 ; 38 C.F.R. Part 4. Separate diagnostic codes identify the various disabilities. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, per 38 C.F.R. § 4.2 (2015); resolving any reasonable doubt regarding the degree of disability in favor of the claimant, per 38 C.F.R. § 4.3 (2015); where there is a question as to which of two evaluations apply, assigning a higher of the two where the disability picture more nearly approximates the criteria for the next higher rating, per 38 C.F.R. § 4.7 (2015); and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disabilities upon the person's ordinary activity, per 38 C.F.R. § 4.10 (2015). See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, when an appeal arises from the initially assigned rating, consideration must be given as to whether staged ratings should be assigned to reflect entitlement to a higher rating at any point during the pendency of the claim. Fenderson v. West, 12 Vet. App. 119 (1999). Moreover, staged ratings are appropriate in any increased-rating claim in which distinct time periods with different ratable symptoms can be identified. Hart v. Mansfield, 21 Vet. App. 505 (2007).

Pyramiding, the evaluation of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided. 38 C.F.R. § 4.14. It is possible, however, for a Veteran to have separate and distinct manifestations attributable to the same injury, which would permit a rating under several diagnostic codes. The critical element permitting the assignment of multiple ratings under several diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition. Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107 (b); 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

The Veteran's service-connected residuals of a right ankle sprain have been rated as 10 percent disabling pursuant to 38 C.F.R. § 471 a, Diagnostic Code 5271. Diagnostic Code 5271 provides a 10 percent evaluation for moderate limited motion of ankle and a 20 percent evaluation for marked limitation of motion of the ankle. The normal range of motion for an ankle is dorsiflexion to 20 degrees and plantar flexion to 45 degrees. 38 C.F.R. § 4.71 , Plate II.

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology. 

Under 38 C.F.R. § 4.40, functional loss may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the claimant on motion. Disability of the musculoskeletal system is the inability to perform normal working movement with normal excursion, strength, speed, coordination, and endurance, and that weakness is as important as limitation of motion, and that a part that becomes disabled on use must be regarded as seriously disabled. A little used part of the musculoskeletal system may be expected to show evidence of disuse, through atrophy, for example. 38 C.F.R. § 4.40. 

The provisions of 38 C.F.R. §§ 4.45 and 4.59 also contemplate inquiry into whether there is limitation of motion, weakness, excess fatigability, incoordination, and impaired ability to execute skilled movements smoothly, and pain on movement, swelling, deformity, or atrophy of disuse. Instability of station, disturbance of locomotion, interference with sitting, standing, and weight-bearing are also related considerations. The Court has held that diagnostic codes predicated on limitation of motion require consideration of a higher rating based on functional loss due to pain on use or due to flare-ups. 38 C.F.R. §§ 4.40 , 4.45, 4.59; Johnson v. Brown, 9 Vet. App. 7 (1997); DeLuca v. Brown, 8 Vet. App. 202, 206 (1995). 

Consideration has been given to whether a higher rating is warranted on the basis of functional impairment and pain. 38 C.F.R. §§ 4.10 , 4.40, 4.45, 4.59; DeLuca, 8 Vet. App. at 204-06.

On VA joints examination in April 2010, the Veteran reported that he injured his right ankle in 1993 while in service. He stated that they were on a run when he stepped in a hole suffering inversion injury to the right ankle. The Veteran stated that he was seen at the base and placed in a cast for approximately two weeks. He was given an unknown medication for the pain, and was seen for follow up. He reported that he was told that he had an old injury but that he had nothing more than mild ankle sprains prior to military service. The Veteran indicated that his right ankle did not improve after the cast was removed. 

After discharge the Veteran was noted to have continued to complain of pain but to not seek further care other than through emergency rooms. The Veteran used over the counter ibuprofen for pain. He was noted to not be seen by any medical provider and to not be seen through the VA. 

The Veteran complained of continued pain in the right anterolateral ankle rated as three to four out of ten that will increase to eight out of ten. He complained of a grinding sensation. He had swelling. He did not use any braces or orthopedic assistive devices. The Veteran took over the counter ibuprofen as needed. The medication took the edge off of his pain. He had flare-ups that are activity dependent that occurred two to three times per week. These caused him to seek rest. The Veteran also noticed increased pain with weather changes. There was no history of surgery and no history of further injury or trauma. The Veteran's activities of daily living were affected. He was able to feed, dress and take care of personal hygiene. The Veteran stated that he was unable to do any yard work. The Veteran's chief limitation was no longer being able to coach basketball. The Veteran's job was not limited. The Veteran noticed occasional redness but no heat. He could walk approximately 45 minutes to one hour and stand four to five hours before needing rest. 

Physical examination revealed that the Veteran's gait was normal. Right ankle range of motion was full and without pain. The Veteran was able to hold the foot at 90 degrees neutral. He had dorsiflexion of 0 to 20 degrees and plantar flexion of 0 to 45 degrees. The Veteran did not exhibit any functional loss due to pain, fatigue, weakness, lack of endurance or incoordination on repetitive motion testing. He did experience increased pain on repetitive motion testing. The ankle was stable to anterior drawer. There was mild laxity with inversion. The ankle was stable to eversion. The Achilles was straight and nontender with weight bearing and non-weight bearing. There was no callus formation. There was no unusual wear pattern to the shoes. There was no evidence of abnormal weight bearing. There was palpable popping on range of motion testing. Strength was five out of five. There was no swelling. The Veteran had good digital pulses and good capillary refill.

Relevantly, the Veteran was diagnosed with right ankle sprain with degenerative changes and mild laxity. 

On VA joints examination in August 2011 the Veteran reported that several times a week, when he awakens, his ankle will be sore. He noted swelling in the morning. 

In July 2012 the Veteran underwent a VA ankle examination. The Veteran indicated that he had to resign his job due to difficulty with prolonged standing and walking with his right ankle. The Veteran reported that he has had continual problems with his right ankle since 1993, and that there seemed to be increased swelling and pain of late. He did not wear a brace at all and did not walk with a cane. He had not seen an orthopedist for the problem and had not had a magnetic resonance imaging (MRI) scan. The Veteran did not take any medication for the problem. He stated that at times the ankle felt as though it is going to give out and that it will occasionally throb at night, making it difficult to sleep. The Veteran reported that he had flare-ups with increased physical activity.

Range of motion of the right ankle was 30 degrees of plantar flexion, with objective evidence of pain at 30 degrees, and 20 degrees or greater of dorsiflexion with no objective evidence of painful motion. After repetitive use, plantar flexion ended at 30 degrees and dorsiflexion ended at 20 degrees or greater. The Veteran did not have any additional limitation in range of motion of the ankle following repetitive use testing. The Veteran had functional loss/impairment with less movement than normal on the right, weakened movement on the right, and pain on movement on the right. The Veteran did not have any localized tenderness or pain on palpation of the joints/soft tissue of either ankle.

Muscle strength testing on the right was plantar flexion of three out of five and dorsiflexion of three out of five. There was no laxity with the anterior drawer test or talar tilt test. There was no ankylosis. There were no "shin splints," stress fractures, Achilles tendonitis, Achilles tendon rupture, or malunion of calcaneus or talus, and the Veteran had not had a talectomy. There was no joint replacement or arthroscopic surgery.

The Veteran's right ankle, knee, and hip demonstrated muscle weakness compared to his left side. There was decreased sensation to soft touch over the right foot and ankle in both an L4-5 and L5-S1 distribution, suggesting some lumbar disc pathology to account for the right leg weakness and numbness. The weakness and numbness in the right lower extremity are therefore not due to any intrinsic right ankle problem at all. The Veteran also demonstrated bilateral knee crepitance, which was noted to probably be secondary to knee degenerative joint disease. 

The Veteran did not use any assistive device and the examiner noted that the remaining effective function would not be equally served by amputation with a prosthesis.

Imaging studies revealed remote avulsion injuries of the medial aspect of the ankle, and osteochondral lesions of the talus, no degenerative joint disease was noted at all. Repeat bilateral ankle x-rays done at the examination showed remote post traumatic changes of the right ankle only, but no degenerative joint disease. 

The examiner noted that the Veteran's chronic right ankle pain would limit his ability to perform prolonged walking and standing. 

The examiner noted that the Veteran's chronic right ankle problems were not substantiated by his medical records. The examiner indicated that the service treatment records are limited to several months and did show clinical evidence of a pre-existing right ankle trauma. The examiner reported that the Veteran was not followed by VA at all, and there were no private medical records in his file. The examiner noted that clinical examination revealed only muscle weakness in the right hip, knee, and ankle, but no obvious swelling or deformity. There was some decreased plantar flexion of the right ankle, but no demonstrable pain with this maneuver, and no laxity was appreciated either. There was loss of sensation distally in the right leg and foot in an L4-5 and L5-S1 distribution, with corresponding mild spurring of the L4-5 on lumbar x-rays. It was the examiner's opinion that the right leg neurological symptoms and diffuse muscle weakness are probably therefore due to the right lower back pathology, and have nothing whatsoever to do with a right ankle injury that occurred 19 years ago. X-rays of the ankles were unremarkable and x-rays of the knees showed mild degenerative joint disease bilaterally which probably also adds to the complaint of right knee discomfort previously noted on other VA examinations, and the right knee pain has nothing to do therefore with his right ankle problems. 

Therefore, in summary, the examiner stated that there were no significant abnormal findings on clinical examination of the Veteran's right ankle other than decreased strength and plantar flexion, and this weakness is also diffusely demonstrated in his right knee and hip also. Therefore, the examiner believed that the problem was stemming from the Veteran's lower back, and that his right ankle was quite stable and not at all worse. 

On VA examination in February 2016, the Veteran was examined and found to have right ankle lateral collateral ligament sprain and osteoarthritis. The Veteran complained of chronic ankle pain, swelling, instability, and recurrent giving way causing some falls. He reported that he had lost his last job 7 years prior, due to ankle pain and inability to stand and walk for long periods. On examination, range of motion was all normal. Dorsiflexion was to 20 degrees and plantar flexion was to 45 degrees. Pain with dorsiflexion and plantar flexion was noted on examination and was reported to cause functional loss. Pain with weight-bearing was also noted, as was objective evidence of localized tenderness or pain on palpation of the joint or associated soft tissue. There was generalized tenderness throughout the ankle, and there was objective evidence of crepitus. The Veteran was able to perform repetitive use testing with at least 3 repetitions, without additional loss of function or range of motion. The examination was not being done after repetitive use over time, but the examiner indicated that the medical examination was consistent with the Veteran's statements describing functional loss with repetitive use over time. Pain was said to cause functional loss with repeated use over time. Right ankle muscle strength was 5/5 in plantar flexion and in dorsiflexion, and there was no muscle atrophy. There was no laxity on anterior drawer test, but there was laxity on talar tilt test. The Veteran was reported to use a brace and cane constantly. The right ankle disability impacted the Veteran's ability to perform any type of occupational task, such that he was restricted to sedentary or light work. In a February 2016 addendum, the examiner indicated that any employment for the Veteran must have a limited amount of standing and walking and allow for rest of the ankle when needed, and that the Veteran could not work on uneven or rough surfaces due to ankle instability. 

[There was a VA examination in June 2016, which has not been considered by the RO. It showed that the Veteran's gait is slightly antalgic due to right ankle pain. The Board finds that this need not be considered by the RO in the first instance prior to a Board decision on the issue currently being addressed. Having an antalgic gait is not part of the specific rating criteria for a higher rating for the Veteran's right ankle disability. The right ankle rating being considered is based on limitation of motion of the ankle. Additionally, the Board notes that there had previously been other evidence like this submitted, and so this is cumulative. For instance, the Veteran's representative indicated in June 2011 that the Veteran reported that his ankle was painful and that he was having difficulty bearing weight and was limping, and the February 2016 VA examination report notes that the Veteran had pain with motion of the right ankle, and on weightbearing, and that the pain would cause functional loss. An antalgic gait is one whose purpose is to avoid pain on ambulation, and ambulation is conducted with weightbearing; accordingly, the information in the June 2016 VA examination report is merely cumulative as essentially the same information was reported earlier. The Board also finds that a remand to test for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint, is not necessary. The February 2016 VA examination report shows that the Veteran had pain on motion, causing functional loss, and the Board accepts that this was on active and passive motion, both in weight-bearing (as indicated by the representative in June 2011) and in nonweight-bearing, and it is unclear that the Veteran's left ankle is undamaged. Accordingly, a remand to obtain a VA examination to comply with Correa v. McDonald, No.13-3238, 2016 WL 3591858 (Vet.App. July 5, 2016), is not necessary.] 

The Board finds that entitlement to an initial evaluation in excess of 10 percent for residuals of right ankle sprain with degenerative changes and laxity is not warranted. At no time during the period on appeal has the Veteran's right ankle had marked limitation of motion. Instead, it has had no more than moderate limitation of motion. In April 2010, the Veteran reported that he used ibuprofen for the pain in his ankle and that he had flare-ups that were activity dependent two to three times a week which caused him to seek rest. Notably, although the Veteran reported that he could not do yard work, his chief limitation was no longer being able to coach basketball. His job was noted to not be limited and the Veteran could walk approximately 45 minutes to one hour and stand for four to five hours before needing rest. The Veteran had 20 degrees of dorsiflexion and 45 degrees of plantar flexion. The Veteran did not exhibit any functional loss due to pain, fatigue, weakness, lack of endurance or incoordination on repetitive motion testing. However, he did experience increased pain on repetitive motion testing. In August 2011, the Veteran reported that sometimes his ankle was sore when he awakens. In July 2012, the Veteran was afforded another VA medical examination. The Veteran reported that he had to resign his job due to difficulty with his ankle with prolonged standing and walking. The Veteran had 30 degrees of plantar flexion with objective evidence of pain at 30 degrees and 20 degrees of dorsiflexion with no objective evidence of painful motion. Repetitive motion plantar flexion ended at 30 degrees and dorsiflexion ended at 20 degrees or greater. The examiner noted that there were no significant abnormal findings on clinical examination of the right ankle other than decreased strength, plantar flexion, and weakness and that these were believed to stem from the Veteran's back. 

On VA examination in 2016, the Veteran's right ankle dorsiflexion was to 20 degrees and his plantar flexion was to 45 degrees, and his muscle strength was normal. 

The normal range of motion of the ankle is dorsiflexion to 20 degrees and plantar flexion to 45 degrees, and no muscle weakness is attributable to the Veteran's right ankle disability. In light of all of the evidence, the Board finds that the Veteran does not have the marked limitation of motion of his right ankle which is necessary for a 20 percent rating. Instead, it has no more than moderate limitation of motion. 

The Board notes that assignment of a higher rating under Diagnostic Codes 5270, 5272, 5273, and 5274 has been considered; however, as the Veteran does not have any ankylosis of the right ankle, malunion of the os calcis or astragalus, and has not undergone an astragalectomy, these diagnostic codes are not for application.

As the preponderance of the evidence is against entitlement to an initial evaluation in excess of 10 percent disabling for residuals of right ankle sprain with degenerative changes and laxity, the claim is denied.

Other considerations

The Board has considered all lay statements from the Veteran about the severity of his disability. The information reported above is very probative, showing, among other things, his right ankle limitation of motion in precise detail. The Board finds these records to be very probative, and that marked limitation of motion of the ankle is not present. 

The discussion above reflects that the rating criteria reasonably describe and contemplate the severity and symptomatology of the Veteran's service-connected right ankle disability. The symptoms and impairment caused by the service-connected right ankle disability are specifically contemplated by the schedular rating criteria including 38 C.F.R. §§ 4.40, 4.45. These include impairment caused by pain, limitation of motion, weakness, and other related factors. No other symptoms are claimed or shown. Thus, consideration of whether the Veteran's disability picture exhibits other related factors such as those provided by the regulations as "governing norms" is not required and referral for extraschedular rating is unnecessary. Thun v. Peake, 22 Vet. App. 111 (2008).

In this case, evidence of record indicates that the collective impact of the service-connected right ankle disability at issue has not created such an exceptional circumstance as to render the schedular rating criteria inadequate. In this case, the evidence does not show that the collective impact or combined effect of the disability at issue presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria. Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014).

TDIU

The Board previously found in December 2012 that the matter of TDIU due to the Veteran's service connected right ankle disability had been raised, per Rice v. Shinseki, 22 Vet. App.447 (2009), as the Veteran indicated during his July 2012 VA examination that he had to resign from his last job due to his service connected right ankle disability. 

VA will grant a total rating for compensation purposes based on unemployability when the evidence shows that a Veteran is precluded from obtaining or maintaining any gainful employment consistent with his education and occupational experience, by reason of her service-connected disabilities. 38 C.F.R. §§ 3.340 , 3.341, 4.16. 

If there is only one such disability, it must be rated at 60 percent or more, and if there are two or more disabilities, there shall be at least one disability rated at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent. 38 C.F.R. § 4.16 (a). For those Veterans who fail to meet the percentage standards set forth in 38 C.F.R. § 4.16 (a), total disability ratings for compensation may nevertheless be assigned when it is found that the service-connected disability(ies) is(are) sufficient to produce unemployability; such cases should be referred to the Director, Compensation and Pension Service, for extraschedular consideration. 38 C.F.R. § 4.16 (b). 

For a Veteran to prevail on a total rating claim, the record must reflect some factor which takes the claimant's case outside the norm. See Van Hoose v. Brown, 4 Vet. App. 361, 363 (1996); 38 C.F.R. §§ 4.1, 4.15. The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. The question is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether he can find employment. See 38 U.S.C.A. § 4 .16 (a); Van Hoose, 4 Vet. App. at 363.

In this case, the Veteran's only service-connected disability is his right ankle disability which is currently rated as 10 percent disabling under the rating schedule. Accordingly, the schedular criteria for TDIU under 38 C.F.R. § 4.16 (a) are not met.

The analysis progresses to consideration of 38 C.F.R. § 4.16 (b), and a determination as to whether referral for extraschedular consideration is warranted, i.e., the Board must determine whether the Veteran is unemployable due to his service-connected disability regardless of its rating. 38 C.F.R. § 4.16 (b) provides that it is established by VA policy that "all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated as totally disabled." However, in these cases, in order for the Veteran to prevail on a claim based on unemployability, it is necessary that the record reflect some circumstance which places the claimant in a different position from other Veterans with the same rating.

The disability picture presented by the Veteran's right ankle disability does not reflect that the impact of it is such that it places him outside of the norm and renders him unemployable. 

Here, the Veteran has made statements to the effect, or which can be construed as indicating, that he is unemployable due to his service connected right ankle disability. However, the Veteran's July 2015 VA Form 21-8940 shows that he has 2 years of college education as well as work experience in auction transportation, in sales, and as a youth and substance abuse counselor; that he last worked full time in May 2011; and that he has applied for employment since then. Given the Veteran's education and past work experience, and the employment limitations and remaining options which are reported to be present due to his service connected right ankle disability, the Board concludes that a TDIU is not warranted. There are a number of sedentary-type employment positions for which he is qualified, given his 2 years of college education and prior work experience in work which can be sedentary. Accordingly, the Board finds that referral for extraschedular consideration of a TDIU is not warranted. 

The Board is grateful to the Veteran for his service, and regrets that a more favorable outcome could not be reached. 

However, the preponderance of the evidence is against greater benefits than indicated herein and there is no doubt to be resolved in his favor regarding the issues. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1991).

ORDER

Entitlement to a January 19, 2009 effective date, but not earlier, for the grant of service connection for residuals of right ankle sprain with degenerative changes and laxity, is allowed.

Entitlement to an initial evaluation in excess of 10 percent for residuals of right ankle sprain with degenerative changes and laxity is denied.

Entitlement to a TDIU due to residuals of right ankle sprain with degenerative changes and laxity is denied.

______________________________________________
M. C. GRAHAM
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs